Ralph W. Wilkey v. Commissioner.
Wilkey v. Commissioner
Docket No. 2169-69 "SC".
United States Tax Court
T.C. Memo 1970-346; 1970 Tax Ct. Memo LEXIS 15; 29 T.C.M. (CCH) 1677; T.C.M. (RIA) 70346; December 22, 1970, Filed Ralph W. Wilkey, pro se, 205 Oak St.,kennett, Mo. Charles M. Lock for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined deficiencies in petitioner's income taxes for the calendar years 1966 and 1967 in the amounts of $418.01 and $541.49, respectively. The issue for decision is whether petitioner is entitled to deduct the expenses of traveling from his family home in Kennett, Missouri to St. Louis, Missouri and his living expenses in St. Louis as traveling expenses while away from home in the pursuit of a trade or business. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioner *16 is an individual who was a legal resident of Kennett, Missouri at the time of the filing of the petition in this case. He and his wife, Rosemary Wilkey, filed joint Federal income tax returns for the calendar years 1966 and 1967 with the district director of internal revenue at St. Louis, Missouri. Petitioner was during the years 1966 and 1967 and had been since 1963 employed by the United States Army Corps of Engineers with post of duty station in St. Louis, Missouri, with the exception of 6 or 8 months in either 1963 and 1964 or when he was stationed at Cape Girardeau, Missouri. During 1966 petitioner was temporarily assigned to duty in New Orleans, Louisiana for 3 months and was fully reimbursed for traveling expenses by the United States Army Corps of Engineers for this 3-month period. On his Federal income tax returns for the calendar years 1966 and 1967 the only income reported was from petitioner's salary with the Corps of Engineers, the salary of petitioner's wife received from teaching school in Kennett, Missouri, some interest from a joint bank account maintained by petitioner and his wife, and some dividends received by petitioner's wife. During the years 1966 and *17 1967 petitioner rented a room at the Baltimore Hotel in St. Louis, Missouri, except for vacation periods and the 3 months of his temporary duty assignment in New Orleans, Louisiana. Petitioner generally stayed at this hotel from Sunday night through Thursday night. On Friday it was his usual practice to travel by bus to Kennett, Missouri, where his family resided. On Sunday evenings he would return to St. Louis by bus. Petitioner's family consisted of his wife and several children. The primary reason that petitioner went to Kennett on the weekends was to be with his family. However, on certain weekends while he was in Kennett, petitioner would do some work for Wilkey and Langford, Inc., a corporation in which petitioner's mother owned 50 percent of the stock. The corporation furnished petitioner with transportation for any work he did and paid any out-of-pocket expenses he incurred in Kennett. Petitioner received no salary as such from Wilkey and Langford, but considered that by his work for this corporation he was repaying an indebtedness which he owed to his mother. Petitioner had a Bachelor of Engineering degree from college and had been employed prior to 1953 either as a *18 commissioned engineering officer in the Army or as a civil engineer by various contracting firms. In 1953 petitioner formed a corporation, Wilkey Gravel Works, Inc., of which he was the sole stockholder. Wilkey Gravel Works, Inc., was engaged in the business of producing and selling gravel and 1678 drilling irrigation wells and certain other incidental engineering or engineering related activities. Sometime after Wilkey Gravel Works was incorporated, it purchased certain property from petitioner's father and borrowed money from petitioner's father to purchase machinery. The understanding was that the indebtedness for the property and the loans would be repaid by a payment of so much per ton of gravel sold by the corporation. The corporation also incurred other indebtednesses for the purchase of machinery and supplies. In 1957 there was 100 inches of rainfall in Duncan County, Missouri, the main operation area of petitioner's corporate business. In 1958 the corporation obtained from the Small Business Administration a disaster loan of $12,000 repayable over a 10-year period at 3 percent interest. Petitioner guaranteed the repayment of this loan. The amount which the corporation *19 obtained from the Small Business Administration loan was not sufficient to enable petitioner to place his business back on a paying basis and in 1959 the corporation had indebtednesses of $29,000 of which $12,000 was owed to petitioner's father and $12,000 to the Small Business Administration. In 1960 petitioner closed down his business and accepted a salaried position with an engineering firm in St. Louis which had a contract on the Titan Missiles project near Denver. Petitioner was assigned primarily to work in Denver with this firm. Petitioner desired to return to the Southeast Missouri area. He was unable to find suitable employment in the Kennett Missouri area and in 1963 accepted a position with the United States Corps of Engineers in St. Louis, Missouri. Petitioner believed that if he maintained some business contacts in Southeast Missouri, particularly in the area around Kennett, he could reestablish the well drilling portion of his business. During the period from 1960 when petitioner closed his business throughout the years here in issue petitioner had an agreement with two men in the Kennett area whereby he furnished the equipment for well drilling and gave technical advice *20 when needed in connection with the well drilling, and the profits after payment of expenses were split between the two operators of the well drilling business and petitioner equally. During most of the years 1961 through 1967 petitioner received some money from the well drilling business. He used this money to pay off his loan from the Small Business Administration, and in 1968 he had completely paid off this loan together with the interest thereon from his receipts from the well drilling business. Petitioner's father prior to his death in 1963 had owned one-half of the stock in Wilkey and Langford, which stock petitioner's mother owned after the year 1963 and during the years here in issue. When petitioner closed his business in 1960 he returned to his father the gravel properties which he had been operating in discharge of a portion of the $12,000 which he still owed to his father. Petitioner had repaid no other part of the $12,000 at the time of his father's death in 1963. After petitioner's father's death petitioner's mother became a full-time salaried employee of Wilkey and Langford, Inc. His mother felt that she and the corporation needed some technical assistance, particularly *21 with respect to bidding on State work and checking the hauling costs at the time the truckers were paid at 2-week intervals. The State work was open for bids generally twice a year in the spring and in the fall. For approximately 3 weekends prior to the placing of bids in the spring and 2 or 3 weekends prior to the fall bidding petitioner would investigate locations where gravel was to be furnished to the State for road maintenance work and prepare the bid to be submitted by Wilkey and Langford. Excepton work in connection with these bids would be done in his free time in St. Louis. At times petitioner would consult with officers and employees of Wilkey and Langford by telephone from St. Louis. In order to properly prepare bids for Wilkey and Langford, the person preparing the bid would have to go to the area of Kennett at least once in the spring and once in the fall to investigate the sites where the gravel was to be delivered. In some years it might have been necessary for a person to go to the area of Kennett for more than
Year Karen John, Jr. Susan Mary Every other Saturday when petitioner was in Kennett he would go by the site of Wilkey and Langford at which truckers were being *22 paid and check into any adjustments that might be necessary to be made in hauling charges. Generally, this would take from 30 minutes to an hour and a half. Although Wilkey and Langford furnished petitioner with transportation in the form of a pick-up truck which they maintained and kept supplied with gasoline 1679 and oil and paid any out-of-pocket expenses which petitioner incurred, petitioner was paid no salary by Wilkey and Langford for the work he did. Petitioner considered that the work he did was to repay his mother the balance of the $12,000 which his corporation had owed to his father at the time of his father's death. At the date of the trial of this case petitioner considered that he had repaid in full the indebtedness owed to his mother. At the time of the trial petitioner had repaid all of the debts which his corporation had owed in 1960 except $3,000 of an open account which petitioner was paying as he was able from receipts from the well drilling business. Petitioner on his income tax return for the calendar year 1966 deducted $1,900 with the explanation "38 wks from home" and on his income tax return for the year 1967 deducted $2,400 with the explanation "48 *23 wks away from home," the amount so deducted consisted of petitioner's estimates of his living expenses while in St. Louis during the years here in issue and his estimate of his traveling expenses between St. Louis, Missouri and Kennett, Missouri during these years. The roundtrip bus fare between St. Louis and Kennett during the years here in issue was $12.45. Respondent in his notice of deficiency disallowed the $1,900 and $2,400 deductions for raveling expenses claimed by petitioner for the years 1966 and 1967 with the explantion that petitioner's tax home was the general locality of his principal employment station or post of duty and therefore the expenses which he claimed to be deductible were not deductible since they were incurred at petitioner's "tax home" and that the cost of travel to and from petitioner's place of employment was not deductible. At the trial petitioner contended that if he were not entitled to the deductions claimed for living expenses in St. Louis and traveling expenses from Kennett to St. Louis on the basis of being away from home in St. Louis, he should be entitled to deduct all or some of his cost of traveling from St. Louis to Kennett and return because *24 of business activity he carried on in Kennett. Opinion It is stipulated in this case that petitioner's principal employment was with the United States Army Corps of Engineers and that his principal place of duty was in St. Louis, Missouri from 1963 through 1967. Petitioner chose to live in Kennett because that was where his family had lived for sometime and his wife had a position teaching. Under the facts here present the law is clear that when he was in St. Louis petitioner was not "away from home" within the meaning of section 162(a)(2), I.R.C. 1954, [1]Commissioner v. Flowers, 326 U.S. 465. Therefore, petitioner is entitled to no deduction for traveling expenses because of his regular employment in St. Louis. *25 The more difficult question here concerns the deductibility of any portion of the round-trip bus fare between St. Louis and Kennett on weekends when petitioner did engage in certain business activities in Kennett. If petitioner had reported income from any of these business activities, the question would be more difficult. However, petitioner did not report any income from these activities since in his view he did not have income when he used the amounts received to repay loans and "pay off by services" an indebtedness to his mother. Since all the indications from this record are that petitioner actually had income in excess of any properly deductible expenses he might have had in traveling on weekends to Kennett, we agree with respondent that petitioner has failed to establish that he is entitled to deduct any of the cost of going from St. Louis to Kennett on any weekend. Petitioner freely admitted that the primary reason he went to Kennett on weekends was to see his family. This fact would not necessarily require a conclusion that no portion of the expense was deductible. Had petitioner reported income from his activities in Kennett or even reported his receipts from the well drilling *26 business, it might be that some part of his travel cost from St. Louis to Kennett could be considered as an expense in earning this income. Petitioner estimated that from 1960 through 1968 his receipts from the well drilling business were at least $12,000. The 1680 indication from the record is that these receipts are in excess of any properly deductible expenses which petitioner incurred in connection with the well drilling business including the cost of going to and from St. Louis to Kennett. Petitioner's work for Wilkey and Langford, Inc., was more in the nature of personal assistance to his mother than work for the corporation. Petitioner considered that he was in effect paid by his mother by cancellation of the indebtedness of his corporation to his mother. However, he reported no income from his work for his mother or Wilkey and Langford, Inc.
On the basis of the facts in this record we sustain respondent's disallowance of the total deduction which petitioner claimed for traveling expenses while away from home for the years 1966 and 1967. Decision will be entered for respondent. Footnotes
1. Sec. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including - * * * (2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; and * * *↩